UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ADAMA JAMMEH, et al., | CASE NO. C19-0620JLR |
| Plaintiffs, | ORDER DENYING THE REMAINDER OF DEFENDANT COLUMBIA DEBT RECOVERY, LLC'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| HNN ASSOCIATES, LLC, et al., | |
| Defendants. | |

## I.   INTRODUCTION

Before the court is Defendant Columbia Debt Recovery, LLC d/b/a Genesis Credit Management, LLC's ("Columbia") motion for summary judgment.  (MSJ (Dkt. # 48).) Plaintiffs Adama Jammeh and Oumie Sallah (collectively, "Plaintiffs") oppose the motion in part but "do not object to dismissal" of their claims for unjust enrichment and civil conspiracy.  (*See* Resp. (Dkt. # 68) at 1.)  Accordingly, on June 4, 2020, the court granted in part Columbia's and Defendant William Wojdak's motions for summary

//

1  judgment and dismissed Plaintiffs' claims for unjust enrichment and civil conspiracy.

2  (6/4/20 Order (Dkt. # 83) at 2.)[1]  The court now considers the remainder of Columbia's

3  motion.[2]  The court has considered Columbia's motion, the parties' submissions filed in

4  support of and in opposition to the motion, the relevant portions of the record and the

5  applicable law.  Being fully advised,[3] the court DENIES the remainder of Columbia's

6  motion.

## II.  BACKGROUND

8        Defendant HNN Associates, LLC ("HNN") is the property manager for a

9  low-income housing complex owned by Defendant Gateway, LLC ("Gateway").  (SAC

10  (Dkt. # 19) ¶¶ 3.2-3.3.)  Plaintiffs lived in the Gateway housing complex from September

11  28, 2017, to February 5, 2018.  (Id. ¶ 3.2.)  The original term of Plaintiffs' lease was from

12  September 28, 2017, to September 27, 2018.  (4/16/20 Wojdak Decl. (Dkt. ## 50, 53) ¶ 5,

13  //

---

15  [1] On the same day that Columbia filed its motion for summary judgment, Mr. Wojdak
    filed a separate motion for summary judgment.  (See Wojdak MSJ (Dkt. # 51).)  On June 4,
16  2020, in addition to dismissing Plaintiffs' claims for unjust enrichment and civil conspiracy, the
    court granted Plaintiffs' Federal Rule of Civil Procedure 56(d) request for additional discovery
17  regarding Mr. Wojdak's motion.  (See 6/4/20 Order at 2-6.)  Thus, the remainder of Mr.
    Wojdak's motion is still pending before the court while the parties complete the court-ordered
    Rule 54(d) discovery.

19  [2] On June 4, 2020, the court also granted Plaintiffs' Federal Rule of Civil Procedure 56(d)
    request for discovery related to Mr. Wojdak's motion for summary judgment (see Resp. at 21)
20  and renoted Mr. Wojdak's motion for July 10, 2020 (see 6/4/20 Order at 5-7; see also Wojdak
    MSJ).

21  [3] No party requests oral argument on Columbia's motion (see MSJ at title page; Resp. at
    title page), and the court does not consider oral argument to be helpful to its deliberative process
22  here, see Local Rules W.D. Wash.  LCR 7(b)(4) ("Unless otherwise ordered by the court, all
    motions will be decided by the court without oral argument.").

ORDER - 2

Ex. A at CDR0014.)[4]  One of the documents Plaintiffs signed in conjunction with their

lease was entitled, "Tax Credit Housing Addendum" ("Addendum").  (*Id.* ¶ 5, Ex. A at

CDR0029-30.)  The Addendum indicated that Plaintiffs would occupy a low-income

housing building eligible for tax credits, and the Addendum required Plaintiffs to disclose

all income for household members.  (*See id.*)  The Addendum stated that the "deliberate

submission of false information will be considered a violation of the Lease Agreement"

and would result in lease termination.  (*Id.*)

In late January 2018, Ms. Jammeh asked Gateway personnel to print a letter for

her.  (*See* 4/16/20 Morrison Decl. (Dkt. # 52) ¶ 4, Ex. B.)  In the letter, Ms. Jammeh

indicated that she was married and received some amount of support from her husband.

(*See id.*)  Gateway and HNN considered the information contained in the letter to be a

breach of Plaintiffs' lease because Ms. Jammeh had not disclosed in the Addendum that

she was married and had an additional source of income.[5]  (*See* MSJ at 9.)  On January

24, 2018, HNN sent Plaintiffs a 3-day Notice to Quit, and on February 5, 2018, HNN

terminated Plaintiffs' lease.  (*See* 4/16/20 Morrison Decl. ¶ 6, Ex. D; *see also* 4/16/20

Chandler Decl. ¶ 30, Ex. 29.)

---

[4] Defendants have filed two identical copies of Mr. Wojdak's declaration at docket numbers 50 and 53.  In the future, the parties should not file multiple copies of the same document on the docket.

[5] The parties dispute whether HNN had a valid basis for evicting Plaintiffs.  (Resp. at 2.) Ms. Jammeh asserts that any mistake on the Addendum was unintentional.  (*Id.* at 3.)  Ms. Jammeh apparently did not believe that she was legally married in the United States because her marriage took place in absentia and by proxy under sharia law.  (*Id.* (citing 4/16/20 Chandler Decl. (Dkt. # 55) ¶¶ 8-9, Exs. 7-8).)  This factual dispute concerning the validity of Plaintiffs' eviction is not material to the issues the court considers now in Columbia's summary judgment motion.

1    HNN conducted an inspection of Plaintiffs' apartment and issued a move-out

2    inspection report on February 6, 2018.  (5/4/20 Leonard Decl. (Dkt. # 69) ¶ 4, Ex. 2

3    ("HNN 30(b)(6) Dep.") at 198:2-5; *see also* 4/16/20 Chandler Decl ¶ 29, Ex. 28.)  An

4    HNN employee, known as the community manager, completed the move-out portion of

5    the Move-In/Move-Out Inspection Form based on photos of the unit taken by and

6    discussions with a maintenance employee.  (HNN 30(b)(6) Dep. at 109:17-110:16,

7    112:3-7; *see also* 4/16/20 Chandler Decl. ¶ 29, Ex. 28.)  The community manager uses

8    HNN's damages estimate form and "industry knowledge to charge to the best of [HNN's]

9    abilities" tenants who are moving out.  (HNN 30(b)(6) Dep. at 156:16-157:8,

10   162:9-163:11.)  For example, the move-out portion of Plaintiffs' Move-In/Move-Out

11   Inspection Form includes entries of $625.00 for "full paint," $200.00 for "cleaning,"

12   $75.00 for "drywall repair," and $250.00 for "carpet cleaning."  (4/16/20 Chandler Decl.

13   ¶ 29, Ex. 28.)  Although HNN charged Plaintiffs $250.00 for carpet cleaning based on

14   HNN's damages estimate form, the carpet cleaning only cost HNN $135.00.  (HNN

15   30(b)(6) Dep. at 161:6-14.)  HNN employees also made a discretionary decision that

16   Plaintiffs forfeited their $700.00 security deposit, and they did not apply Plaintiffs'

17   deposit to any of the move-out charges.  (*Id.* at 181:6-184:22.)

18   HNN added the charges assessed on the move-out portion of the

19   Move-In/Move-Out Inspection Form to another form known as the Move Out Statement.

20   (*See* 4/16/20 Chandler Decl. ¶ 30, Ex. 29.)  There are 38 line-item entries charged on

21   Plaintiffs' Move Out Statement, including $625.00 assessed for "[p]ainting," $200.00

22   //

ORDER - 4

assessed for "cleaning," $75.00 for "[d]rywall repair throughout [apartment], billed at $25[.00]/hour for 3 hours," and $250.00 assessed for "[c]arpet cleaning."  (*See id.*)

On February 26, 2018, HNN's community manager sent Plaintiff's move-out package, including Plaintiffs' move-out charges, to HNN's corporate office for review. (*Id.* ¶ 4, Ex. 3.)  HNN's corporate office responded the next day to provide corrections to the package and request explanations for some of the charges. (*Id.* ¶ 10, Ex. 9.)  HNN's community manager only obtained approval for Plaintiffs' move-out package after making the corrections directed by HNN's corporate office.  (*See id.*)  On February 27, 2018, HNN sent Plaintiffs a letter demanding payment of $14,919.11, including $11,702.00 for future rent.  (*See id.* at 5-6;[6] *see also* MSJ at 9-10 ("At the time of the move-out, HNN assessed approximately $14,919.11 in damages and other charges, including future rent.").)

HNN reduced the amount it demanded that Plaintiffs pay by $11,702.00 after Gateway/HNN rented Plaintiffs' former unit to another tenant.  (*See* 4/16/20 Wojdak Decl. ¶ 5, Ex. A at 4 (attaching a March 9, 2018, revised move-out form showing an $11,702.00 deduction from the amount owing); *see also* MSJ at 9 (stating that the $14,919.11 that HNN demanded from Plaintiffs "was reduced to $3,286.58 after HNN/Gateway was able to rent out the unit")).)  On March 9, 2018, HNN sent a letter to

//

//

---

[6] The court cites to the page numbers for this exhibit that are generated by the court's electronic filing system.

Plaintiffs demanding the $3,286.58 payment.  (4/16/20 Wojdak Decl. ¶ 6, Ex. B at 2.)[7]

Plaintiffs did not remit any payment to HNN.  (*See id.* ¶ 7, Ex. C.)

Columbia is in the business of collecting debts that landlords claim against their

former tenants.  (4/16/20 Chandler Decl. ¶ 16, Ex. 15 ("Engberg Dep.") at 48:9-49:17.)[8]

On March 21, 2018, HNN assigned Plaintiffs' outstanding balance of $3,286.58 to

Columbia for collection.  (4/16/20 Wojdak Decl. ¶ 7, Ex. C.)  HNN emailed information

about Plaintiffs' account to Columbia, including the March 9, 2018, Move Out

Accounting Cover Sheet (Checklist), the Move Out Statement, and the

Move-In/Move-Out Inspection Form.  (Engberg Dep. at 161:16-25, 162:20-165:7,

169:3-21; *see also* 4/16/18 Chandler Decl. ¶¶ 28-30, Exs. 27-29.)  The information in

these documents included the principal amount of Plaintiffs' purported debt to HNN and

Plaintiffs' reported move-out date.  (*See* 4/16/20 Chandler Decl. ¶¶ 29-30, Exs. 28-29.)

Columbia sent its first letter to Plaintiffs on March 22, 2018, demanding the

payment of $3,286.58 as principal and $48.62 as interest, which Columbia calculated at

12% per annum from February 5, 2018, which was Plaintiffs' move-out date.  (4/16/20

Wojdak Decl. ¶ 8, Ex. D; *see* MSJ at 21 (acknowledging that the interested was

calculated at 12% of the principal from Plaintiffs' February 5, 2018, move-out date).)

//

---

[7] The court cites to the page numbers for this exhibit that are generated by the court's electronic filing system.

[8] Although Columbia also collects debts for the municipal courts and a client in the automobile industry, these accounts are "very minor portions of [Columbia's] portfolio."  (*Id.* at 49:12-17.)

1   Columbia assigned Mistie Waters as an account representative for Plaintiffs'

2   account.  (MSJ at 10; Resp. at 5.)  Ms. Waters engaged in a series of telephone calls with

3   Plaintiffs between April 23, 2018, and May 25, 2018.  (4/16/20 Wojdak Decl. ¶ 9, Ex. E

4   ("Call Logs"); 5/4/20 Leonard Decl. ¶ 6, Ex. 4 ("Call Transcripts").)  Ms. Waters offered

5   to settle Plaintiffs' account for $2,629.26.  (4/16/20 Wojdak Decl. ¶ 9, Ex. E at CDR0006

6   (05/23/18 Entry).)  Ms. Waters represented to Plaintiffs that this amount was the lowest

7   she could go and the offer included waiving the interest that had accumulated on their

8   account.  (*See id.*)  On May 25, 2018, Ms. Waters, on behalf of Columbia, sent Plaintiffs

9   a letter confirming Columbia's receipt of $2,629.26 from Plaintiffs and Columbia's

10  settlement of their account.  (*Id.* ¶ 10, Ex. F.)

11  Columbia argues that "Plaintiffs did not dispute the debt."  (MSJ at 13 (citing Call

12  Logs).)  Indeed, there is no evidence that Plaintiffs disputed the debt in writing to

13  Columbia.  (*See generally* Dkt.)  However, the transcripts of the calls between Ms.

14  Waters and Plaintiffs reveal that on May 3, 2018, Ms. Jammeh repeatedly disputed that

15  Plaintiffs owed HNN any money.  (*See* Call Transcipts at 23:2-9, 25:7-9, 25:24-26:1.)

16  On May 15, 2018, Ms. Jammeh also told Ms. Waters that Columbia's attempt to collect

17  the debt was "unfair" and Ms. Jammeh intended to take "a legal action."  (*Id.* at 35:1-3;

18  *see also id.* at 35:17-19.)

19  On March 7, 2019, Plaintiffs filed suit against Columbia and others alleging

20  violations of the Washington's Collection Agency Act ("CCA"), RCW ch. 19.16,

21  violations of Washington's Consumer Protection Act ("CPA"), RCW ch. 19.86, the tort

22  of conversion, civil conspiracy, wrongful eviction, breach of contract, and intentional

1    infliction of emotional distress.  (*See* Compl. (Dkt. ## 1-1).)  On April 25, 2019,

2    Plaintiffs filed a first amended complaint, in which they added a claim alleging violations

3    of the federal Fair Debt Collection Practice Act ("FDCPA"), 15 U.S.C. § 1692, *et se*q.

4    (*See* 7/12/19 Mot. (Dkt. # 12) at 1-2.)  On April 26, 2019, Columbia removed this action

5    to federal court.  (Not. of Removal (Dkt. # 1).)  On October 16, 2019, Plaintiffs filed their

6    second amended complaint alleging violations of the Washington's Collection Agency

7    Act ("CAA"), RCW ch. 19.16, violations of Washington's Consumer Protection Act

8    ("CPA"), RCW ch. 19.86, violations of the federal Fair Debt Collection Practice Act

9    ("FDCPA"), 15 U.S.C. § 1692, *et se*q., violations of the Residential Landlord Tenant Act,

10   RCW ch. 59.10, unjust enrichment, and civil conspiracy.  (*See* SAC (Dkt. # 19).)  In

11   addition, Plaintiffs added putative class allegations.  (*Id.* ¶¶ 5.1-5.8.)

12        On April 16, 2020, Columbia filed its motion for summary judgment.  (*See*

13   *generally* MSJ.)  Columbia moves for summary judgment on Plaintiffs' claims for

14   violations of the FDCPA, violations of the CAA, violations of the CPA, unjust

15   enrichment, and civil conspiracy.  (*See generally id.*)  Plaintiffs do not oppose the portion

16   of Columbia's motion seeking summary judgment of Plaintiffs' claims for unjust

17   enrichment and civil conspiracy.  (Resp. at 1.)  Accordingly, on June 4, 2020, the court

18   granted in part Columbia's motion for summary judgment on Plaintiff's unjust

19   enrichment and civil conspiracy claims but reserved ruling on the remainder of

20   Columbia's summary judgment motion.  (6/4/20 Order at 2.)  The court now considers

21   the remainder of Columbia's motion.

22   *//*

# III.    ANALYSIS

## A.    Summary Judgment Standard

Summary judgment is proper when the pleadings, discovery, and other materials on file, including any affidavits or declarations, show that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Miranda v. City of Cornelius*, 429 F.3d 858, 860 n.1 (9th Cir. 2005). To satisfy its burden at summary judgment, a moving party without the burden of persuasion "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc*., 210 F.3d 1099, 1102 (9th Cir. 2000) (citing *High Tech Gays v. Def. Indus. Sec. Clearance Office*, 895 F.2d 563, 574 (9th Cir. 1990)). "If the party moving for summary judgment meets its initial burden of identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact, the nonmoving party may not rely on the mere allegations in the pleadings in order to preclude summary judgment[, but instead] . . . must set forth, by affidavit or as otherwise provided in [Federal] Rule [of Civil Procedure] 56, specific facts showing that there is a genuine issue for trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (internal citations and quotation marks omitted) (citing, among other cases, *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 (1986)).

//

**B.     FDCPA Claims**

Plaintiffs claim that Columbia violated 15 U.S.C. §§ 1692e(2), (5), and (10) of the FDCPA by "communicating to Plaintiffs that they owed amounts that they did not owe." (SAC ¶ 6.31.)  Plaintiffs also allege that Columbia violated 15 U.S.C. §§ 1692f and 1692f(1) by "collecting and attempting to collect amounts Plaintiffs did not owe."  (*Id.* ¶ 6.32.)  Finally, Plaintiffs assert that Columbia violated 15 U.S.C. § 1692e(8) by "threatening to report false negative information to each Plaintiffs' credit report."  (*Id.* ¶ 6.33.)  Columbia moves for summary judgment in its favor on all of Plaintiffs' FDCPA claims.  (MSJ at 12-17.)  The court considers each FDCPA claim in turn.

**1.  15 U.S.C. § 1692e(2), (5), and (10)**

Pursuant to 15 U.S.C. § 1692e:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

**********

(2) The false representation of (A) the character, amount, or legal status of any debt; or (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.

**********

(5) The threat to take any action that cannot legally be taken or that is not intended to be taken.

**********

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

15 U.S.C. § 1692e.  Plaintiffs assert claims under the FDCPA based on each of these

provisions.  (*See* SAC ¶ 6.31 ("Columbia . . . violated 15 U.S.C. §§ 1692e, e(2), e(5),

e(10) by communicating to Plaintiffs that they owed amounts that they did not owe.").)

Columbia argues that it is entitled to summary judgment on Plaintiffs' 15 U.S.C.

§ 1692e claims because Plaintiffs did not dispute the debt in writing within 30 days of

Columbia's initial communication with them.  (*See* MSJ at 12-15.)  Pursuant to

§ 1692g(a)(3), the FDCPA requires debt collectors to advise consumers of their right to

dispute an asserted debt in writing "within 30 days after receipt of the notice."  15 U.S.C.

§ 1692g(a)(3).  The debt collector must further advise consumers that if they do not do

so, "the debt will be assumed valid by the debt collector."  *Id.*  Columbia argues that

because it was entitled to presume the debt was valid under 15 U.S.C. § 1692g, it should

also be entitled to summary judgment in its favor on Plaintiffs' 15 U.S.C. § 1692e claims.

(*See* MSJ at 12-15.)  The court rejects this argument for the reasons stated below.

First, although the Ninth Circuit has not definitively resolved the issue before the

court, the Second, Third, and Fourth Circuits have squarely rejected Columbia's

argument.  *See Vangorden v. Second Round, Ltd. P'ship*, 897 F.3d 433, 439 (2d Cir.

2018) ("Like the Third and Fourth Circuits, we reject this argument because nothing in

the text of the FDCPA suggests that a debtor's ability to state a § 1692e or § 1692f claim

'is dependent upon the debtor first disputing the validity of the debt in accordance with

§ 1692g.'") (quoting *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 392 (4th

Cir. 2014) and citing *McLaughlin v. Phelan Hallinan & Schmieg, LLP*, 756 F.3d 240,

247-48 (3d Cir. 2014) (holding that "statute's text provides no indication that Congress

1    intended to require debtors to dispute their debts under § 1692g before filing suit under

2    § 1692e")).  Specifically, § 1692g's language is conditional, identifying a debt collector's

3    obligations "[i]f" the consumer disputes the debt within 30 days.  15 U.S.C. § 1692g(b).

4    As the Third Circuit observed, this language suggests that "disputing a debt" pursuant to

5    § 1692g is an option available to consumers, not a condition precedent to bringing suit

6    under §§ 1692e or 1692f.  *McLaughlin*, 756 F.3d at 247; *see also Vangorden*, 897 F.3d at

7    439.  If Congress had intended that asserting a dispute under § 1962g was a prerequisite

8    to suit under §§ 1692e and 1692f, it could have so stated with language to that effect.  *See*

9    *Russell*, 763 F.3d at 392.  Further, the position of the Second, Third, and Fourth Circuits

10   is consistent with the remedial nature of the FDCPA and "its solicitude for the least

11   sophisticated consumer."  *Vangorde*n, 897 F.3d at 439; *see also Hernandez v. Williams,*

12   *Zinman & Parham PC*, 829 F.3d 1068, 1078-79 (9th Cir. 2016) (stating that "[s] a 'broad

13   remedial statute,'. . . the FDCPA must be liberally construed in favor of the consumer")

14   (quoting *Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1060 (9th Cir. 2011)).

15          Moreover, although the Ninth Circuit has not ruled definitively, the rulings of the

16   Second, Third, and Fourth Circuits are consistent with prior Ninth Circuit authority in

17   this court's view.  In *Clark v. Capital Credit & Collection Services, Inc.*, 460 F.3d 1162,

18   1173-77 (9th Cir. 2006), the Ninth Circuit addressed the issues of § 1692g compliance

19   and § 1692e liability separately.  The Ninth Circuit held that the defendants had

20   adequately complied with § 1692g after contacting the creditor about the nature and

21   balance of the debt and were, therefore, entitled to summary judgment on the plaintiffs'

22   § 1692g claim.  *See Clark*, 460 F.3d at 1174.  However, the Ninth Circuit did not

1   conclude that the defendants' compliance with § 1692g resolved the defendants' liability

2   concerning the plaintiffs' § 1692e claim.  *See Clark*, 460 F.3d at 1174 ("Our inquiry into

3   the verification of the debt does not end with the conclusion that neither [of the

4   defendants] violated § 1692g's verification provisions.  The [plaintiffs] also argue that

5   the evidence establishes conclusively that [the defendants] knew the debt alleged by [the

6   creditor] was invalid and misstated, amounting primarily to a violation of § 1692e(2)(a),

7   which prohibits the false representation of 'the character, amount, or legal status of any

8   debt.'").  Instead, the Ninth Circuit concluded that the defendants were not entitled to

9   summary judgment either on the plaintiffs' § 1692e claim or the affirmative defense

10  provided under § 1692k(c), which allows a "narrow exception to strict liability under the

11  FDCPA" when defendants can demonstrate that their attempts to collect an invalid debt

12  are the result of a bona fide error.  *See Clark*, 460 F.3d at 1174.  Thus, based on the Ninth

13  Circuit's analysis in *Clark*, as well as the persuasive authority cited above from the

14  Second, Third, and Fourth Circuits, this court concludes that disputing the debt under

15  § 1692g is not a prerequisite to suit under other provisions of the FDCPA, such as

16  § 1692e or § 1692f; nor is Columbia's compliance with § 1692g a defense to Plaintiffs'

17  § 1692e or § 1692f claims.

18      Finally, *Walton v. EOS CCA*, 885 F.3d 1024 (7th Cir. 2018)—the authority upon

19  which Columbia relies—is not to the contrary.  The Seventh Circuit's decision in *Walton*

20  addressed a consumer's FDCPA claim for a violation of the § 1692g validation provision

21  itself.  885 F.3d at 1027.  In *Walton*, the consumer argued that the debt collector violated

22  the § 1692g validation provision by failing to go back to the original creditor to verify the

1  debt in response to her dispute.  *Id*.  The Seventh Circuit concluded that all the debt

2  collector needed to do to satisfy the debt validation requirement of § 1692g in response to

3  a written dispute of the debt within 30 days was to verify that the debt collector's demand

4  letter to the consumer matched the information provided by the creditor.  *Id.* ("It is both

5  sensible and consistent with that purpose to construe § 1692g(b) as requiring a debt

6  collector to verify that its letters to the consumer accurately convey the information

7  received from the creditor.").  Indeed, this ruling is consistent with Ninth Circuit

8  authority addressing a debt collector's debt validation requirements in response to a claim

9  under § 1692g.  *See Clark*, 460 F.3d at 1173-74.  Here, however, Plaintiffs do not allege a

10  violation of § 1692g, and as noted above, the requisites demanded of debt collectors by

11  § 1692g are distinct from those demanded by either §§ 1692e or 1692f.  *See, e.g.*, *Clark*,

12  460 F.3d at 1174.  Thus, the court denies Columbia's motion for summary judgment of

13  Plaintiffs' § 1692e claims based on Plaintiffs' failure to provide a written dispute of the

14  debt within 30 days of Columbia's initial communication under § 1692g.[9]

15  **2.  15 U.S.C. § 1692f**

16    Pursuant 15 U.S.C. § 1692f:

17  A debt collector may not use unfair or unconscionable means to collect or
   attempt to collect any debt. Without limiting the general application of the
18  foregoing, the following conduct is a violation of this section:

19

20

---

21    [9] Columbia also relies on *Chaudhry v. Gallerizzo*, 174 F.3d 394, 406 (4th Cir. 1999).
   (MSJ at 14 n.44, 19 n.58, 20 n.63, 21 n.70.)  *Chaudhry* is distinguishable on the same grounds as
22  *Walton*—specifically, that the Fourth Circuit addressed a consumer's claim for violation of the
   § 1692g validation provision itself and not some other provision of the FDCPA.

1  (1) The collection of any amount (including any interest, fee, charge, or
2  expense incidental to the principal obligation) unless such amount is
   expressly authorized by the agreement creating the debt or permitted by law.

3  15 U.S.C. § 1692f.  Plaintiffs assert a claim under these provisions of the FDCPA.  (*See*

4  SAC ¶ 6.32 (Columbia . . . violated 15 U.S.C. [§] 1692f and [§] 1692f(1) by collecting

5  and attempting to collect amounts Plaintiffs did not owe.").)

6  Columbia argues that it is entitled to summary judgment on Plaintiffs' § 1692f

7  claim because it "did not attempt to collect an amount not authorized [by agreement] or

8  permitted by law."  (MSJ at 16 (underlining omitted).)  First, Columbia asserts that

9  Plaintiffs' Lease Agreement permitted Columbia to collect all damages stemming from

10 Plaintiffs' alleged breach of the Lease Agreement.  In so arguing, Columbia relies upon

11 paragraph 14 of the Lease Agreement, which states:

12  Tenant agrees to pay any and all damages stemming from Tenant's breach of
    this Lease Agreement, including, but not limited to, all rent and charges due
13  for the duration of the lease term, all the costs in connection herewith
    including, but not by way of limitation, reasonable attorney's fees (whether
14  or not the action proceeds to judgment), rents and all outstanding balances.

15 (*Id.* at 17 (citing 4/16/20 Wojdak Decl. ¶ 5, Ex. A at CDR0018).)

16 The court concludes that Columbia is not entitled to summary judgment on

17 Plaintiffs' § 1692f claim based on this contract provision.  Although Plaintiffs agreed to

18 pay "all damages" stemming from their alleged breach of the Lease Agreement and "all

19 costs in connection therewith" (*see* 4/16/20 Wojdak Decl. ¶ 5, Ex. A at CDR0018), there

20 is evidence in record that HNN over-charged Plaintiffs for at least some of these "costs"

21 or "damages."  For example, although HNN charged Plaintiffs $250.00 for carpet

22 cleaning, HNN's Rule 30(b)(6) deponent testified that the carpet cleaning only cost HNN

1   $135.00.  (*See* HNN 30(b)(6) Dep. at 161:6-14.)  Thus, the court concludes that

2   Columbia fails to establish that there no genuine issue of material fact concerning its

3   attempts to collect an amount that was not "expressly authorized by the agreement

4   creating the debt." *See* 15 U.S.C. § 1692f(1).

5        Columbia also argues that it is entitled to summary judgment on Plaintiffs'

6   § 1692f(1) claim that Columbia was not entitled to charge Plaintiffs any prejudgment

7   interest.  (MSJ at 16-17.)  There is nothing in the Lease Agreement that "expressly

8   authorize[s]" charging prejudgment interest on Plaintiffs' debt.  *See* 15 U.S.C.

9   § 1692f(1); (*see generally* 4/16/20 Wojdak Decl. ¶ 5, Ex. A at CDR0014-28.)

10  Columbia—not HNN—added prejudgment interest to Plaintiffs' account.  (Engberg Dep.

11  at 72:7-10; 4/16/20 Chandler Decl. ¶ 18, Ex. 17 ("Dean Dep.") at 36:5-7 ("Q. . . . Does

12  HNN add interest to unpaid balances?  A. No.").)  Columbia argues that it is "permitted

13  by law" to add prejudgment interest to Plaintiffs' debt.  *See* 15 U.S.C. § 1692f(1); (MSJ

14  at 16 (citing RCW 19.52.010).)  Under RCW 19.52.010, creditors are allowed to recover

15  prejudgment interest of 12% on liquidated claims where the parties have not agreed to a

16  different interest rate.  *See King Cty. v. Puget Sound Power & Light Co.*, 852 P.2d 313,

17  314 (Wash. Ct. App. 1993) ("In general, prejudgment interest may be awarded . . . when

18  an amount claimed is liquidated . . . .").  Columbia argues that it is entitled to summary

19  judgment on Plaintiffs' § 1692f(1) prejudgment interest claim because Plaintiffs' debt

20  was liquidated.  (MSJ at 16-17.)  The court disagrees.

21       Columbia appears to argue that Plaintiffs' debt is liquidated because the various

22  charges to which Columbia added prejudgment interest are listed on HNN's invoices or

1    other documents.  (*See id.* at 17 ("[T]he debt was calculated using figures provided by

2    HNN in the move-out report.") (citing 4/16/20 Wojdak Decl. ¶ 5, Ex. A at CDR0009,

3    CDR011-13).)  However, it is the character of the debt that determines whether the claim

4    is a "liquidated sum" and whether, as a result, Columbia may charge prejudgment interest

5    or not.  *See Lacey Marketplace v. United Farmers of Alberta Cooperative, Ltd.,* Nos.

6    C13-0383JLR, C13-0384JLR, 2015 WL 11217248, at *1 (W.D. Wash. May 21, 2015)

7    (stating that "it is the character of the claim . . . that is determinative of the question of

8    whether an amount of money sued for is a 'liquidated sum.'") (quoting *Prier v.*

9    *Refrigeration Eng'g Co.*, 442 P.2d 621, 626 (Wash. 1968)).  Further, nothing about the

10   assignment of Plaintiffs' debt from HNN to Columbia transformed the character of

11   Plaintiffs' debt.  An assignee, such as Columbia, takes the assigned debt "subject to

12   defenses assertible against the assignor."  *Lonsdale v. Chesterfield*, 662 P.2d 385, 389

13   (Wash. 1983); *see also Pac. Nw. Life Ins. Co. v. Turnbull*, 754 P.2d 1262, 1267 (Wash.

14   Ct. App. 1988) ("Ordinarily, an assignee takes a contract subject to any defenses or

15   setoffs that an account debtor may have against a creditor/assignor.") (citing *Fed. Fin.*

16   *Co. v. Humiston*, 404 P.2d 465, 468 (Wash. 1965)).  Thus, the court assess the character

17   of Plaintiffs' debt at the time it was allegedly created between HNN and Plaintiffs.

18       In general, prejudgment interest may be awarded (1) when an amount is

19   liquidated, or (2) when the amount of an unliquidated claim is for an amount due upon a

20   specific contract for the payment of money and the amount due is determinable by

21   computation with reference to a fixed standard contained in the contract, without reliance

22   on opinion or discretion."  *Puget Sound Power & Light Co*., 852 P.3d at 314.  With

1    regard to the second category, although some of the items HNN charged Plaintiffs could

2    be determined "by computation with reference to a fixed standard in the contract"—such

3    as the amount of rent payable during the lease period—many of the "costs" HNN charged

4    Plaintiffs—such as painting, cleaning, carpet cleaning, and drywall repair—could not be

5    so determined.  *See id.*  There is no fixed amount or fixed standard for these charges in

6    the Lease Agreement.  (*See generally* 4/16/20 Wojdak Decl. ¶ 5, Ex. A at CDR0014-28.)

7            In addition, the court cannot conclude that many of HNN's move-out charges to

8    Plaintiffs were "liquidated."  *See Puget Sound Power & Light Co.*, 852 P.3d at 314.  A

9    "liquidated" claim is "one where the evidence furnishes data which, if believed, makes it

10   possible to compute the amount with exactness, without reliance on opinion or

11   discretion."  *Prier*, 442 P.2d at 626.  Yet, HNN's Rule 30(b)(6) deponent testified that

12   HNN's community manager determined many of Plaintiffs' charges using a damages

13   "[e]stimate [f]orm" and "industry knowledge to charge to the best of [HNN's] abilities."

14   (HNN 30(b)(6) Dep. at 156:16-157:8; *see also id.* at 162:9-163:11.)  Further, even after

15   the community manager initially estimated various charges to Plaintiffs' account "to the

16   best of [his] abilities," those charges were subject to further correction or adjustment in

17   the corporate office prior to finalization.  (*See* 4/16/20 Chandler Decl. ¶ 4, Ex. 3; *id.* ¶ 10,

18   Ex. 9.)  Based on this evidence, the court cannot conclude on summary judgment that

19   these charges were liquidated or "possible to compute the amount[s] with exactness,

20   without reliance on opinion or discretion."  *Prier*, 442 P.2d at 626; *see also Lacey*

21   *Marketplace*, 2015 WL 11217248, at *1-*2 (concluding that amount of money the

22   plaintiffs were entitled to recover from the defendants for remodeling costs related to re-

1    tenanting their properties was unliquidated because it was subject to a reasonableness

2    determination).   As such, the court concludes that Columbia is not entitled to summary

3    judgment on Plaintiffs' § 1692f(1) claim concerning prejudgment interest.

4    **3.   15 U.S.C. § 1692e(8)**

5          Pursuant to 15 U.S.C. § 1692e(8):

6          A debt collector may not use any false, deceptive, or misleading
           representation or means in connection with the collection of any debt.
7          Without limiting the general application of the foregoing, the following
           conduct is a violation of this section:

8                                      **********

9
           (8) Communicating or threatening to communicate to any person credit
10         information which is known or which should be known to be false, including
           the failure to communicate that a disputed debt is disputed.
11
     15 U.S.C. § 1692e(8).  Plaintiffs assert a claim under this provision of the FDCPA.  (*See*
12
     SAC ¶ 6.33 ("Columbia . . . violated 15 U.S.C. § 1692e(8) by threatening to report false
13
     negative information to each Plaintiffs' credit report.").)
14
           Columbia argues that it is entitled to summary judgment on this claim for the same
15
     reasons that it is entitled to summary judgment on Plaintiffs' FDCPA claims under 15
16
     U.S.C. § 1692e(2), (5), and (10), and 15 U.S.C. § 1692f—namely that "Plaintiffs did not
17
     . . . dispute the debt within the 30-day period under 15 U.S.C. § 1692g," and that the
18
     prejudgment interest that Columbia charged Plaintiffs was proper.  (*See* MSJ at 15.)  The
19
     court, however, has already rejected Columbia's motion for summary judgment on these
20
     //
21
     //
22

1    grounds, *see supra* §§ III.B.2, 3, and so does here too with respect to Plaintiffs'

2    § 1692e(8) claim for the same reason.[10]

3    **C.    CCA & CPA Claims**

4          In their complaint, Plaintiffs allege that Columbia violated both the CAA and the

5    CPA.  (SAC ¶¶ 6.1-6.16, 6.36-6.50.)  However, a CAA violation is enforced through the

6    CPA, and violations of the CAA are *per se* violations of the CPA.  *Weinstein v.*

7    *Mandarich Law Grp.*, 798 F. App'x 88, 91 (9th Cir. 2019) (citing *Panag v. Farmers Ins.*

8    *Co. of Wash.*, 204 P.3d 885, 897 (Wash. 2009)).  Thus, Plaintiffs bring two CPA

9    claims—one based on Columbia's alleged violations of the CAA (SAC ¶¶ 6.1-6.16) and a

10   second based on unfair or deceptive acts that are not per se CPA violations (*id.*

11   ¶¶ 6.36-6.50).  (*See* Resp. at 18 ("Plaintiffs make one [CPA] claim based on violations of

12   the [CAA] and a second for non per se unfair or deceptive acts or practices.").)  Columbia

13   moves for summary judgment in its favor on both claims.  (*See* MSJ at 17-22.)

14         The CAA is Washington State's counterpart to the FDCPA.  *Pana*g, 204 P.2d at

15   897.  Like the FDCPA, the CAA "prohibits collection agencies from making false

16   representations as to the legal status of a debt, threatening the debtor with impairment of

17   credit rating, attempting to collect amounts not actually owed, or implying legal liability

18   for costs not actually recoverable, . . . among other practices."  *Id.*  Plaintiffs allege that

19   Columbia violated several provisions of the CAA, including RCW 19.16.250 (13), (15),

20

21   ───────────────
     [10] Columbia argues that at a minimum Plaintiffs "agree that debt collectors can report
     accounts [to] credit reporting agencies." (Reply at 7 & n.19 (quoting Resp. at 18).)  However,
     Plaintiffs' claim is not based merely on Columbia's threat to report the debt, but on Columbia's
     threat to report debt that Plaintiffs argue was not owed.  (*See* Resp. at 18.)

22

(16), and (21).  (SAC ¶¶ 6.6-6.10.)  Specifically, Plaintiffs allege that Columbia violated

these CAA provisions by "repeatedly communicat[ing] to Plaintiffs that they owed

amounts not legally due and interest or fees on those amounts not legally due," and by

threaten[ing] to take actions it cannot legally take when . . . threaten[ing] that credit

ratings would be impaired if [Plaintiffs] did not pay the claims allegedly owed based on

the move-out fees and alleged rent due."  (*Id.* ¶¶ 6.10-6.11.)

Columbia's arguments that it is entitled to summary judgment on Plaintiffs' CAA

and CPA claims are based almost entirely on the federal law it cites and arguments it

makes in support of its motion for summary judgment on Plaintiffs' FDCPA claims.  (*See*

MSJ at 19-22.)  Although there are "notable differences" between the FDCPA and CAA,

*see Gray v. Suttell & Assocs.*, 334 P.3d 14, 17 (Wash. 2014), courts look to the FDCPA

as an aid in interpreting the CAA particularly when, like here, the specific provisions of

the two statutes at issue are similar, *see, e.g.*, *Sprinkle v. SB&C Ltd.,* 472 F. Supp. 2d

1235, 1248 (W.D. Wash. 2006) (finding that the defendant violated RCW 19.16.250(15)

of the CAA after finding that the defendant also violated § 1692e(5) of the FDCPA due to

the similarities between the state and federal provisions).  Here, the court concludes that

because Columbia failed to demonstrate that it is entitled to summary judgment on

Plaintiffs' FDCPA claims, it also fails to demonstrate that it is entitled to summary

judgment on Plaintiffs' CAA and CPA claims based on the same federal authorities and

arguments.

//

//

1

## IV.  CONCLUSION

2          Based on the foregoing analysis, the court DENIES the remainder of Columbia's

3  motion for summary judgment (Dkt. # 48).[11]

4          Dated this 17th day of June, 2020.

5

6          _____

7          JAMES L. ROBART
           United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21        _____
          [11] As noted above, on June 4, 2020, the court granted in part Columbia's and Defendant
22   William Wojdak's motions for summary judgment and dismissed Plaintiffs' claims for unjust
     enrichment and civil conspiracy.  (6/4/20 Order at 2.)

ORDER - 22