THE HONORABLE JAMES L. ROBART

1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

8

ADAMA JAMMEH and OUMIE SALLAH,

NO. 2:19-cv-00620-JLR

9

Plaintiffs,

**PLAINTIFFS' UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT**

10

v.

11
12

HNN ASSOCIATES, LLC, GATEWAY, LLC,
COLUMBIA DEBT RECOVERY, LLC, d/b/a
GENESIS CREDIT MANAGEMENT, LLC, and
WILLIAM WOJDAK,

**NOTED FOR CONSIDERATION:
January 29, 2021**

13
14

Defendants.

15
16
17
18
19
20
21
22
23
24
25
26
27

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 2:19-cv-00620-JLR

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

## TABLE OF CONTENTS

Page

I.  INTRODUCTION .................................................................................. 1

II. PROCEDURAL HISTORY ...................................................................... 3

    A.  Plaintiffs' complaint ......................................................................... 3

    B.  The parties engaged in substantial discovery ................................. 3

    C.  The parties litigated both class certification and partial summary judgment ... 4

    D.  The settlement negotiations .......................................................... 4

III. SETTLEMENT TERMS .......................................................................... 5

    A.  The proposed subclass .................................................................. 5

    B.  Monetary relief ............................................................................. 6

        1.  Payments to Settlement Class Members ............................... 6

        2.  Class administration fees and costs ...................................... 6

        3.  Class Representatives' statutory damages and incentive awards ........ 7

        4.  Attorneys' fees and litigation expenses ............................... 7

    C.  Prospective relief .......................................................................... 7

    D.  Release ........................................................................................ 8

    E.  Notice Plan .................................................................................. 8

IV. ARGUMENT AND AUTHORITY ............................................................ 8

    A.  The FDCPA subclass should be preliminarily certified for settlement purposes 8

        1.  The FDCPA subclass satisfies the requirements of Rule 23(a) .............. 9

        2.  The FDCPA subclass satisfies the requirements of Rule 23(b)(3) ........ 10

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT - i
CASE No. 2:19-cv-00620-JLR

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

B.    The proposed settlement should be preliminarily approved.......................... 10

2.    The relief provided by the settlement is adequate considering the strength of Plaintiffs' case, the risk of maintaining a class action through trial, and the risk, cost, and delay of trial and appeal .......... 13

3.    The settlement will be fairly distributed to Settlement Class Members.................................................................................... 14

4.    Class Counsel will request approval of a fair and reasonable fee ....... 15

5.    The reaction of Class Members to the proposed settlement.............. 17

F.    The Notice Plan complies with Rule 23(e) and due process ........................... 17

G.    The schedule for final approval ...................................................................... 20

V.    CONCLUSION  ........................................................................................................ 20

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT - ii
CASE NO. 2:19-CV-00620-JLR

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1

**TABLE OF AUTHORITIES**

Page

*Amchem Prods. v. Windsor*,
    521 U.S. 591 (1997) ................................................................................. 18

*Cavnar v. BounceBack, Inc.*,
    No. 2:45-CV-235-RMP, ECF No. 154 (E.D. Wash. Sept. 15, 2015) ........................ 13, 16

*Celano v. Marriott Int'l Inc.*,
    242 F.R.D. 544 (N.D. Cal. 2007) ................................................................... 9

*Dennings v. Clearwire Corp*,
    Case No. C10-1859JLR, 2013 WL 1858797 (W.D. Wash. May 3, 2013) ...................... 16

*Estate of Brown v. Consumer Law Assocs.*,
    No., 2013 EL 2285368 (E.D. Wash. May 23, 2013) .................................................. 13

*Gehrich v. Chase Bank USA, N.A.*,
    316 F.R.D. 215 (N.D. Ill. 2015) ..................................................................... 14

*Guerrero v. RJM Acquisitions LLC*,
    499 F.3d 926 (9th Cir. 2007) ....................................................................... 19

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ..................................................................... 11

*Hansen v. Ticket Track, Inc.*,
    213 F.R.D. 412 (W.D. Wash. 2003) ............................................................... 9

*Ikuseghan v. Multicare Health Sys.*,
    No. 3:14-cv-05539-BHS, 2016 WL 3976569 (W.D. Wash. July 25, 2016) ................... 11

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) ..........................................................11, 15, 16

*In re Hyundai and Kia Fuel Econ. Litig.*,
    926 F.3d 539 (9th Cir. 2019) ............................................................. *passim*

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ....................................................................... 13

*In re Mercury Interactive Corp. Sec. Litig.*,
    618 F.3d 988 (9th Cir. 2010) ....................................................................... 16

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

*In re Online DVD-Rental Antitrust Litig.*,
    779 F.3d 934 (9th Cir. 2015) ...................................................................... 11, 15

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 1
    9 F.3d 1291 (9th Cir. 1994) ............................................................................. 15

*Knapp v. Art.com, Inc.*,
    283 F.Supp.3d 823 (N.D. Cal. 2017) ................................................................ 13

*Lane v. Facebook, Inc.*,
    696 F3d 811 (9th Cir. 2012) ............................................................................ 19

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ...................................................................... 14

*Ortiz v. Fiberboard Corp.*,
    527 U.S. 815 (1999) ....................................................................................... 11

*Rinky Dink, Inc. v. World Business Lenders*,
    Case No. C14-0268-JCC, 2016 WL 3087073 (W.D. Wash. May 31, 2016) .................. 14

*Rodriguez v. West Publ'g Corp.*,
    563 F.3d 948, 966 (9th Cir. 2009) ......................................................................... 14

*Ruch v. AM Retail Group, Inc.*,
    No. 14-cv-05352-MEJ, 2016 WL 1161453, at *11 (N.D. Cal. Mar. 24, 2016) .............. 12

*Six (6) Mexican Workers v. Arizona Citrus Growers*,
    904 F.2d 1301, 1311 (9th Cir. 1990) ................................................................ 16

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ........................................................................ 15

## STATE CASES

*Panag v. Farmer's Ins. Co. of Wash.*,
    166 Wash.2d 27, 204 P.3d 885 (2009) ............................................................. 19

## FEDERAL RULES AND STATUTES

Rule 23(a) ................................................................................................. 8

Rule 23(a)(3) ............................................................................................. 9

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

Rule 23(a)(4) ................................................................................................................ 9

Rule 23(b)(3) ................................................................................................................ 8

Rule 23(c)(2)(B) .......................................................................................................... 17

Rule 23(c)(3) ............................................................................................................... 17

Rule 23(c)(2)(B) .......................................................................................................... 17

Rule (e)(1) ................................................................................................................... 17

Rule 23(e)(2) ........................................................................................................ 11, 12

Rule 23(e)(3) ............................................................................................................... 11

Rule 23(h) ................................................................................................................... 16

15 U.S.C. § 1692k(a)(2)(B) ......................................................................................... 14

15 U.S.C. § 1692k(a)(3) .............................................................................................. 15

**STATE STATUTES**

RCW 19.86.090 ........................................................................................................... 15

RCW 19.86.050 ........................................................................................................... 19

RCW 19.86.920 ........................................................................................................... 19

RCW 59.18.260 ........................................................................................................... 15

RCW 59.18.270 ........................................................................................................... 15

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT - v
CASE NO. 2:19-CV-00620-JLR

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

**I. INTRODUCTION**

1

2    Plaintiffs Adama Jammeh, Oumie Sallah, and Cynthia Quintero each lived in apartment

3    complexes managed by HNN Associates, LLC. Plaintiffs allege that HNN failed to comply with all

4    requirements of the Residential Landlord Tenant Act (RLTA) regarding move in and move out

5    inspection forms, failed to return security deposits within the time required by the Act, and

6    unfairly forfeited tenant deposits in violation of Washington's Consumer Protection Act (CPA).

7    Plaintiffs further allege that Columbia Debt Recovery, the company that collected alleged debts

8    on HNN's behalf, violated the CPA, Washington Collection Agency Act (CAA) and Fair Debt

9    Collection Practices Act (FDCPA) by adding interest to former tenant accounts calculated from

10    the date the tenant moved out, rather than from the time that after the tenant had notice that

11    she or he owed a liquidated amount.

12    The Court certified classes comprised of HNN's former tenants who paid a security

13    deposit without receiving an adequate move-in checklist, received a move-out statement from

14    HNN after the 21-day statutory period had elapsed, or had their security deposit forfeited by

15    HNN. Dkt. No. 105 at 57. The Court also certified a class of HNN's former tenants whose

16    accounts HNN placed with CDR for collections and to whom CDR sent at least one written

17    collection demand. *Id.* At the Court's request, the parties submitted supplemental briefing on

18    whether the Court should certify a subclass to address FDCPA claims arising from CDR's

19    collection practices. Dkt. Nos. 106–108, 111–113.

20    The parties have reached an agreement to settle the case on a classwide basis and

21    Plaintiffs seek the Court's preliminary approval of the settlement and notice to the Class

22    Members. The settlement requires Defendants to pay $1,600,000 to establish a non-

23    reversionary Settlement Fund.[1] The Settlement Fund will be used to make payments to the

24    Class Members. There are 3,456 people associated with the accounts within the Classes. All

25    Settlement Class Members who have a deliverable mailing address will receive a payment at

26    _____

27    [1] Unless otherwise noted, all capitalized terms have the definitions set forth in the Settlement Agreement and Release attached as Exhibit 1 to the Declaration of Blythe H. Chandler ("Chandler Decl.").

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1  the address for the primary tenant in the HNN unit with no requirement to submit claims. If the

2  administration costs, attorneys' fees, and service award amounts requested are approved, the

3  net fund available to pay settlement awards will be $960,333.[2] After the $30,000 that Plaintiffs

4  request be allocated to FDCPA statutory damages and paid in pro rata shares to the CDR FDCPA

5  Subclass members is deducted, there is a fund of $930,933 to pay awards based on the

6  amounts of security deposits HNN retained interest CDR collected and. This is roughly 70% of

7  the total amounts of security deposits retained and interest collected from the Class members.

8  This is an excellent outcome for the Classes.

9      Defendants have also agreed to provide significant non-monetary relief. The Settlement

10  Agreement requires CDR to cease collecting amounts in excess of the principal balances, correct

11  credit reporting, and enter partial satisfactions of judgements obtained against class members.

12  Settlement Agreement § III.6.

13      The Settlement Fund will also be used to pay service awards to the Plaintiffs, attorneys'

14  fees and costs, and class administration expenses approved by the Court. Plaintiffs Jammeh and

15  Sallah will each request a service award of $5,000. Plaintiff Quintero will request a service

16  award of $2,000. Class Counsel will request an award of attorneys' fees and costs totaling no

17  more than $600,000. Class Administrator P&N has estimated that it can administer the

18  settlement for $27,067. Chandler Decl. ¶ 15.

19      The settlement is an excellent result for Class Members, and is fair, adequate, and

20  reasonable. Accordingly, Plaintiffs respectfully request that the Court take the following initial

21  steps in the settlement approval process: (1) provisionally certify the proposed CDR FDCPA

22  Subclass and designate Cynthia Quintero as the subclass representative; (2) grant preliminary

23  approval of the settlement; (3) approve the proposed notice plan; (4) appoint P&N to serve as

24  the Class Administrator; and (5) schedule the final fairness hearing and related dates.

25

26

27

---

[2] $1,600,000 fund - $12,000 service awards - $600,000 attorneys fees – 27,067 administration costs = $960,933.

PLAINTIFFS' UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT - 2
CASE No. 2:19-cv-00620-JLR

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1

## II.  PROCEDURAL HISTORY

2     **A.     Plaintiffs' complaint.**

3           Following an investigation, Plaintiffs Adama Jammeh and Oumie Sallah filed their initial

4     complaint in King County Superior Court on March 7, 2019. Dkt. No. 1-1. Plaintiffs filed their

5     First Amended Complaint on April 25, 2019, and Defendants removed the action to this Court.

6     Dkt. No. 1. Plaintiffs sought to amend their complaint a second time to add class action

7     allegations on July 12, 2019, and were granted leave to do so. Dkt. Nos. 12, 19. Plaintiffs allege

8     that CDR's practices of (1) collecting and threatening to collect unlawful move-out fees; (2)

9     adding unlawful or exaggerated interest charges; and (3) threatening Plaintiffs with impairment

10    of their credit ratings violated the CAA, and were therefore *per se* violations of the CPA. *Id.* ¶¶

11    6.1–6.16. Plaintiffs also alleged that CDR's collection practices with respect to HNN's former

12    tenants violated the FDCPA. *Id.* ¶¶ 6.17–6.35.

13          Plaintiffs allege HNN violated the RLTA by collecting security deposits without providing

14    complete move-in checklists and failing to provide statements within 21 days following move-

15    out containing HNN's "full and specific" basis for retaining tenants' security deposits. *Id.* ¶¶

16    6.51–6.56 . Plaintiffs' also allege that HNN forfeited tenant security deposits in violation of the

17    CPA. *Id.* ¶¶ 6.36–6.50.

18    **B.     The parties engaged in substantial discovery.**

19          In the year and a half after the complaint was filed, the parties engaged in substantial

20    discovery including several hard-fought disputes presented to the Court. Chandler Decl. ¶ 10;

21    Dkt. Nos. 40, 43, 88. The parties exchanged initial disclosures in June 2019. Chandler Decl. ¶ 10.

22    Thereafter, the parties exchanged multiple rounds of written discovery requests and engaged in

23    lengthy negotiations related to the scope of the parties' respective requests. *Id.* The parties

24    reached impasse requiring Court intervention on two occasions. Dkt. Nos. 38–40; 85-89.

25    Plaintiffs obtained and analyzed payment data and documents regarding CDR's collection

26    policies and procedures and HNN's move-in/move-out policies and procedures and emails

27    between HNN and CDR related to those practices. Dkt. Nos. 85–89; Chandler Decl. ¶ 10.

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1  Plaintiffs deposed representatives of HNN and CDR. Chandler Decl. ¶ 10. Plaintiffs also sought

2  information via public records requests and subpoenas duces tecum to third parties. *Id.*

3  **C.    The parties litigated both class certification and partial summary judgment.**

4        After the parties fully briefed class certification (Dkt. Nos. 54–58, 66, 67, 70-72, 77, 78),

5  the Court certified the following Classes under Rule 23(a) and Rule 23(b)(3):

6
7        **HNN CLASSES:** Former tenants of an HNN managed property in
         Washington who moved in before February 1, 2019 and:

8        (1) who moved out on or after July 12, 2017, and from whom HNN
9        collected a deposit or security without providing a move-in checklist that
         stated the condition of the walls, floors, countertops, carpets, and
10       appliances in the unit (the "Move-In Form" Class); or

11       (2) who moved out on or after July 12, 2017, and to whom HNN mailed a
12       statement of HNN's basis for retaining a deposit more than 21-days after
         the tenant moved out of an HNN-managed unit (the "Late Statement"
13       Class); or

14       (3) who moved in to an HNN managed property after July 31, 2016, and
15       whose deposit was forfeited by HNN (the "Forfeiture Class").

16       **CDR CLASS:** All former tenants of an HNN managed property in
17       Washington whose accounts HNN placed with CDR between February 13,
         2017, and January 31, 2019, and to whom CDR sent at least one written
18       collection demand.

19  Dkt. No. 105 at 57. The Court reserved ruling on certification of a FDCPA Subclass and ordered

20  the parties to submit supplemental briefing on the matter. *Id.* at 58. The Court had yet to rule

21  on certification of the FDCPA Subclass when the parties filed a Notice of Settlement. Dkt. No.

22  114; Chandler Decl. ¶ 12. The parties also fully briefed a motion for summary judgment filed by

23  CDR, which the Court denied in large part (Dkt. No. 83).

24  **D.    The settlement negotiations.**

25        On Monday, October 19, 2020, the parties participated in a full day mediation with Louis

26  Peterson of Hillis Clark Martin & Peterson P.S. Chandler Decl. ¶ 11. Mr. Peterson mediates

27  large, complex cases, including those involving consumer protection claims. *Id.* The parties did

PLAINTIFFS' UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT - 4
CASE NO. 2:19-CV-00620-JLR

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1  not reach a settlement during mediation, but continued arm's length negotiations with Mr.

2  Peterson's assistance. *Id.* The parties agreed to the key terms of the settlement on November

3  12, 2020, and fully executed the Settlement Agreement on December 16, 2020. *Id.* ¶ 11, Ex. 1

4  (Settlement Agreement).

5                                   **III. SETTLEMENT TERMS**

6          The complete Settlement Agreement and Release of Claims is attached as Exhibit 1 to

7  the declaration of Blythe Chandler filed in support of this motion.

8  **A.      The proposed subclass**

9          The Court certified three HNN classes and a CDR class. Dkt. No. 105 at 57. In its

10 certification order, the Court ordered the parties to submit supplemental briefing on the merits

11 of creating an FDCPA subclass. *Id*. at 58. The Court did so in response to CDR's argument that

12 Plaintiffs Jammeh and Sallah's FDCPA claims are subject to a statute of limitations defense and

13 they are therefore not typical of the CDR Class's claims and Jammeh and Sallah's statement on

14 reply that if the Court believed there was a statute of limitations issue, it could certify an FDCPA

15 subclass. In order to resolve any potential need for an FDCPA subclass, Plaintiffs request that

16 the Court provisionally certify a CDR FDCPA subclass for settlement purposes and designate

17 Cynthia Quintero as the subclass representative. The proposed subclass definition for

18 settlement purposes is:

19         All members of the CDR Class to whom CDR sent at least one written
20         collection demand on or after July 12, 2018.

21 Settlement Agreement § II.3.

22         The proposed subclass is limited to CDR class members who received a collection letter

23 from CDR within one year prior to the date Plaintiffs filed their motion for leave to file their

24 second amended complaint. Ms. Quintero is a member of the CDR Class and the proposed

25 subclass. Dkt. No. 106 at 12.

26

27

**B.    Monetary relief.**

Defendants will pay $1,600,000 into a Settlement Fund used for payment of Settlement Awards to all Settlement Class Members, service awards to Class Representatives not to exceed $12,000 total, attorneys' fees of and expenses not to exceed $600,000, and settlement administration costs estimated at $27,067. Settlement Agreement § III.1.

1.    Payments to Settlement Class Members

After court-approved expenses for Class Administration, Plaintiffs' service awards and attorneys' fees and costs are deducted from the Settlement Fund, the remainder will be used to compensate Settlement Class Members. Settlement Class Members for whom the Class Administrator has a deliverable mailing address will receive a single cash award. The amount of each Settlement Class Member's payment will be their pro rata share of the cash portion of the Settlement Fund based on their alleged damages. Plaintiffs propose to allocate $30,000 to payment of statutory damages under the FDCPA based on the most recent information they have regarding CDR's net worth.

There are 3,456 Class Members. If no Class Members exclude themselves, and all Class Members have deliverable addresses, Class Members will be paid approximately 70% of their alleged actual damages measured by the amounts of security deposits retained by HNN and the amounts of interest collected by CDR.  If certified by the Court, members of the CDR FDCPA Subclass will each receive an additional payment of approximately $20, representing their pro rata share of the statutory damages. Chandler Decl. ¶ 14.

2.    Class administration fees and costs

The Settlement Agreement provides that any class administration fees and costs will be paid from the Settlement Fund. *Id.* § VII.2. After a competitive bidding process, Class Counsel propose to retain P&N Consulting (P&N) as the Class Administrator, subject to Court approval. P&N estimates that it can carry out the Notice Plan for $27,067. Chandler Decl. ¶ 15. P&N will disseminate the proposed postcard notice by mail; follow up on undelivered notices; establish and maintain a Settlement Website; establish a toll-free number and respond to Settlement

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT - 6
CASE NO. 2:19-CV-00620-JLR

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1    Class Member calls; process, log, and review exclusion requests; administer the Settlement

2    Fund; disburse Court-approved attorneys' Fee Award and Service Awards, and distribute the

3    Settlement Fund to Settlement Class Members. *Id.*

4         3.    <u>Class Representatives' statutory damages and incentive awards.</u>

5         Class Representatives Jammeh and Sallah will request combined statutory damage and

6    service award payments to each of them in the amount of $5,000, consisting of a $1,000

7    statutory damages award authorized by the FDCPA, 15 U.S.C. § 1692k(a)(2)(B), and $4,000 in

8    recognition of their service to the Class. Chandler Decl. ¶ 16. Jammeh and Sallah assisted in

9    drafting the complaints and participated extensively with their counsel in responding to written

10   discovery, including searching for and securing documents from foreign agencies and providing

11   four sets of supplemental responses. *Id.* Plaintiff Quintero will request a combined statutory

12   damage and service award payment of $2,000. *Id.* Ms. Quintero provided factual and

13   documentary information regarding the claims and assisted in drafting Plaintiff's supplemental

14   briefing regarding the FDCPA subclass. *Id.*

15        4.    <u>Attorneys' fees and litigation expenses.</u>

16        Class Counsel will request that the Court approve an award of litigation expenses of and

17   reasonable attorneys' fees of up to $600,000 calculated using the lodestar method. Chandler

18   Decl. ¶ 17, Settlement Agreement § IV.2. Class Counsel's current lodestar is more than

19   $600,000. Chandler Decl. ¶ 17; Leonard Decl. ¶ 5; Arons Decl. ¶ 4. Securing Court approval of

20   the settlement, making sure the settlement is fairly administered and implemented, and

21   obtaining dismissal will require an additional time commitment. Chandler Decl. ¶ 17. Class

22   Counsel will file a motion requesting approval of an attorneys' fee and cost award to

23   compensate and reimburse them for the work already performed in this case and the work

24   remaining to be performed in connection with the settlement. Settlement Agreement § IV.2.

25   **C.    Prospective relief.**

26        The Settlement Agreement requires Defendants to cease all efforts to collect any

27   amounts in excess of the principal allegedly owed by Settlement Class Members on their HNN

PLAINTIFFS' UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT - 7
CASE NO. 2:19-CV-00620-JLR

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1   accounts. Settlement Agreement § III.6. CDR must cease reporting Class Members' alleged

2   debts to any consumer reporting agency and will request deletion of all tradelines relating to

3   Class Members' HNN accounts. *Id.* CDR is also required to file satisfactions of any judgment it

4   has obtained against Settlement Class Members on their HNN accounts in excess of the

5   principal. *Id.* Finally, CDR must cease adding prejudgment interest on HNN accounts. *Id.*

6   **D.      Release.**

7          The release is appropriately tailored to the claims made in the case. In exchange for the

8   benefits provided by the settlement, Settlement Class Members will release any claims that

9   arise from or relate to HNN's collection or retention of a security deposit, forfeiture of a

10  security deposit, Move-Out charges or procedures, imposition of Move-Out Charges, CDR's

11  debt collection efforts related to Class Members and their HNN Accounts, or payments to

12  Defendants of any amount above the Move-Out Charges reflected on the final move-out

13  statement issued to a Settlement Class Member by HNN, including, but not limited to, claims

14  based on a violation of the CAA, FDCPA, RLTA, CPA, and any other statutory or common law

15  claim. *Id.* § XI.2. The release does not extend to defenses or counterclaims Settlement Class

16  Members may have to the amount of any Move-Out Charges Defendants may seek to collect in

17  future lawsuits, or any claims, defenses, or counterclaims Settlement Class Members may have

18  relating to wrongful eviction. *Id.*

19  **E.      Notice Plan.**

20         The parties propose a Notice Plan that includes mailed notice to Settlement Class

21  Members using address information from Defendants' records and updated through the

22  National Change of Address system or similar system. The Notice Plan is described in section

23  IV.E below.

24                          **IV.  ARGUMENT AND AUTHORITY**

25  **A.      The FDCPA subclass should be preliminarily certified for settlement purposes.**

26         The subclass satisfies the requirements of Rule 23(a) and (b)(3). The Rule 23(a)

27  requirements are numerosity, commonality, typicality and adequacy. Rule 23(b)(3) requires

PLAINTIFFS' UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT - 8
CASE NO. 2:19-CV-00620-JLR

1    Plaintiffs to establish "that the questions of law or fact common to class members predominate

2    over any questions affecting only individual members, and that a class action is superior to

3    other available methods for fairly and efficiently adjudicating the controversy." "[T]he aspects

4    of Rule 23(a) and (b) that are important to certifying a settlement class are 'those designed to

5    protect absentees by blocking unwarranted or overbroad class definitions.'" *In re Hyundai and*

6    *Kia Fuel Econ. Litig.*, 926 F.3d 539, 558 (9th Cir. 2019) (citation omitted). "The focus is 'on

7    whether a proposed class has sufficient unity so that absent members can fairly be bound by

8    decisions of class representatives." *Id*. (citation omitted).

9           1.     The FDCPA subclass satisfies the requirements of Rule 23(a)

10          The proposed subclass has at least 1,000 members. Thus, numerosity is satisfied. *See*

11   *Celano v. Marriott Int'l Inc.*, 242 F.R.D. 544, 548-49 (N.D. Cal. 2007) (numerosity is generally

12   satisfied when a class has at least 40 members).

13          The Court already ruled that there are numerous common and determinative questions

14   related to the CDR Class's FDCPA claims. Dkt. No. 105 at 34. None of these questions, nor their

15   determinative nature, is changed by the creation of an FDCPA subclass or the addition of Ms.

16   Quintero as a class representative.

17          Typicality is satisfied because Ms. Quintero's claims are "reasonably coextensive with

18   those of the absent class members." *See* Fed. R. Civ. P. 23(a)(3); *Hansen v. Ticket Track, Inc.*, 213

19   F.R.D. 412, 415 (W.D. Wash. 2003). CDR demanded the principal assigned by HNN and interest

20   from date of move out from Ms. Quintero all members of the proposed FDCPA subclass using

21   collection letters that were materially the same. *See* Dkt. No. 106 at 14.

22          Finally, the adequacy requirement is satisfied when the class representatives will "fairly

23   and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To make this

24   determination, "courts must resolve two questions: '(1) do the named plaintiffs and their

25   counsel have any conflicts of interest with other class members and (2) will the named plaintiffs

26   and their counsel prosecute the action vigorously on behalf of the class?'" *In re Hyundai and Kia*

27   *Fuel Econ. Litig.*, 926 F.3d at 566 (citation omitted). The Court already determined that Class

PLAINTIFFS' UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT - 9
CASE NO. 2:19-CV-00620-JLR

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1    Counsel is adequate to represent the certified classes, including the CDR Class. Dkt. No. 105 at

2    58. Ms. Quintero understands her obligation to represent the best interests of the absent class

3    members and is committed to serving as a subclass representative. Dkt. No. 108 at ¶¶ 10-11.

4    Ms. Quintero has no conflicts with other members of the proposed subclass.

5           2.    <u>The FDCPA subclass satisfies the requirements of Rule 23(b)(3)</u>

6           Class certification is appropriate under Rule 23(b)(3) when "questions of law or fact

7    common to the members of the class predominate over any question affecting only individual

8    members, and … a class action is superior to other available methods for the fair and efficient

9    adjudication of the controversy." In the context of a certification of a settlement class,

10   predominance is "readily met" where "class members were exposed to uniform . . .

11   misrepresentations and suffered identical injuries within only a small range of damages." *See In*

12   *re Hyundai and Kia Fuel Econ. Litig.*, 926 F.3d at 559. The Court previously ruled that common

13   questions predominate with respect to the CDR Class's CPA claims. Dkt. No. 105 at 54-56. The

14   predominant nature of these common legal questions is no different for the proposed FDCPA

15   subclass.

16          Superiority is also satisfied because resolution of thousands of the relatively small-value

17   claims in this one action is far preferable to a multitude of individual lawsuits and promotes

18   consistency and efficiency of adjudication. *See* Fed. R. Civ. P. 23(b)(3); *see also Hansen*, 213

19   F.R.D. at 416–17 (the cumbersome nature of individual litigation and the comparatively minimal

20   damages recoverable under the FDCPA make it likely that class members will have little interest

21   in bringing their own action). The Court already found common treatment of the CDR Class's

22   claims is superior based on these facts. Dkt. No. 105 at 56. Common treatment of the proposed

23   subclass is superior for the same reasons.

24   **B.    The proposed settlement should be preliminarily approved.**

25          The court's role at the preliminary approval stage is to ensure that "the agreement is

26   not the product of fraud or overreaching by, or collusion between, the negotiating parties, and

27   that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned."

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1    *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) (citation omitted); *see also In re*

2    *Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944 (9th Cir. 2015).

3        Under Rule 23(e)(2), a district court considers whether (A) the class representatives and

4    their counsel have adequately represented the class; (B) the proposal was negotiated at arm's

5    length; (C) the relief provided by the settlement is adequate, taking into account: (i) the costs,

6    risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing

7    relief including the method of processing class-member claims, if required; (iii) the terms of any

8    proposed award of attorneys' fees, including timing of payment; (iv) any agreement required to

9    be identified under Rule 23(e)(3) made in connection with the proposed settlement; and (v) the

10   proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2).

11       These factors are similar to those previously identified by the Ninth Circuit, including: (1)

12   the strength of Plaintiff's case; (2) the risk, expense, complexity, and likely duration of further

13   litigation; (3) the risk of maintaining class action status through trial; (4) the amount offered in

14   settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the

15   experience and views of counsel; (7) the presence of a governmental participant; and (8) the

16   reaction of the class members to the proposed settlement. *See In re Bluetooth Headset Prods.*

17   *Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011).

18       Plaintiffs will address the factors outlined by Rule 23(e)(2) and the Ninth Circuit, many of

19   which overlap.

20       1.    The settlement is the result of arm's-length, non-collusive negotiations.

21       The parties negotiated the settlement at arm's length over the course of several weeks.

22   "Arm's length negotiations conducted by competent counsel constitute *prima facie* evidence of

23   fair settlements." *Ikuseghan v. Multicare Health Sys.*, No. 3:14-cv-05539-BHS, 2016 WL

24   3976569, *3 (W.D. Wash. July 25, 2016); *see also Ortiz v. Fiberboard Corp.*, 527 U.S. 815, 852

25   (1999) ("[O]ne may take a settlement amount as good evidence of the maximum available if

26   one can assume that parties of equal knowledge and negotiating skill agreed upon the figure

27   through arms-length bargaining.").

PLAINTIFFS' UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT - 11
CASE NO. 2:19-CV-00620-JLR

1    The negotiations were conducted with the assistance of Louis Peterson, an experienced

2   mediator, and included a full-day mediation. *See Ruch v. AM Retail Group, Inc.,* No. 14-cv-

3   05352-MEJ, 2016 WL 1161453, at *11 (N.D. Cal. Mar. 24, 2016) (holding that the "process by

4   which the parties reached their settlement," which included "formal mediation … weigh[ed] in

5   favor of preliminary approval"); Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018

6   amendment ("the involvement of a neutral or court-affiliated mediator or facilitator in

7   [settlement] negotiations may bear on whether they were conducted in a manner that would

8   protect and further the class interests").

9    Class Counsel negotiated the settlement with the benefit of many years of prior

10   experience and a solid understanding of the facts and law of this case. Chandler Decl. ¶ 10.

11   Class Counsel have extensive experience litigating and settling class actions, and consumer class

12   actions challenging debt collection practices in particular. Chandler Decl. ¶¶ 7–9; Leonard Decl.

13   ¶¶ 9–10; Arons Decl. ¶¶ 7–11. The recommendation of experienced counsel weighs in favor of

14   granting approval and creates a presumption of reasonableness. *See Bellinghausen v. Tractor*

15   *Supply Co.*, 306 F.R.D. 245, 257 (N.D. Cal. 2015) ("The trial court is entitled to, and should, rely

16   upon the judgment of experienced counsel for the parties." (citation omitted)).

17    The Ninth Circuit has identified "red flags" that may suggest that plaintiffs' counsel

18   allowed pursuit of their own self-interest to infect settlement negotiations, including when

19   counsel receive a disproportionate portion of the settlement, the parties agree to a "clear

20   sailing" arrangement providing for the payment of attorneys' fees separate and apart from

21   class funds, or the parties agree that any fees not awarded will revert to defendants rather than

22   be added to the class fund. *In re Hyundai and Kia Fuel Econ. Litig.*, 926 F.3d at 569. None is

23   present in this settlement. Because Class Counsel will be paid from the same Settlement Fund

24   as Class Members, they were incentivized to negotiate the largest fund possible and

25   Defendants are free to object to Class Counsel's request. The Court has ultimate discretion over

26   the amount of the attorneys' fee award after reviewing Class Counsel's motion. Any requested

27   fees or Service Awards not approved by the Court will be distributed to Settlement Class

1    Members. Settlement Agreement § III.1.

2           2.      The relief provided by the settlement is adequate considering the strength of
               Plaintiffs' case, the risk of maintaining a class action through trial, and the risk,
3              cost, and delay of trial and appeal.

4           Defendants' agreement to pay $1,600,000 to settle this case *and* to cease the debt-

5    collection practices challenged in this litigation, request deletion of negative credit reporting,

6    and file partial or full satisfactions of judgments required under the Settlement Agreement is

7    more than adequate given the risks and delay of continued litigation. The monetary benefits of

8    the settlement alone, which will pay Class Members approximately 70% of the total actual

9    damages Class Counsel estimated for purposes of mediation, exceeds similar settlements

10   approved by other courts. *See Knapp v. Art.com, Inc.*, 283 F.Supp.3d 823, 833 (N.D. Cal. 2017)

11   (approving settlement of consumer class action that provided 42% of the average total

12   potential recovery and injunctive relief); *Cavnar v. BounceBack, Inc.*, No. 2:45-CV-235-RMP, ECF

13   No. 154 (E.D. Wash. Sept. 15, 2015) (approving settlement providing 15.6% of alleged unlawful

14   collection fees paid by class members alleging FDCPA and Consumer Protection Act violations);

15   *Estate of Brown v. Consumer Law Assocs.*, No. , 2013 EL 2285368, at *3 (E.D. Wash. May 23,

16   2013) (approving settlement of class claims under Consumer Protection Act paying class

17   members and estimated 30% of funds collected for challenged debt adjusting practices); *In re

18   Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (affirming the district court's

19   approval of a settlement estimated to be worth between 1/6 and 1/2 of class members'

20   estimated loss).

21          Plaintiffs are confident in the strength of their case but also pragmatic about the risks

22   inherent in litigation and various defenses available to Defendants. In Plaintiffs' view, liability

23   was relatively clear based on a review of HNN and CDR's policies and related practices. But

24   success was not guaranteed. Defendants have consistently denied liability for Plaintiffs' claims

25   (Settlement Agreement § XIII.1) and asserted fifteen affirmative defenses. Dkt. No. 31 ¶¶ 8.1–

26   8.15. Plaintiffs still had several hurdles to clear before resolution through further litigation,

27

1   including additional discovery, supplemental briefing related to Mr. Wojdak's motion for

2   summary judgement, dispositive motions likely to be filed by HNN, Gateway, LLC, and Plaintiffs,

3   and ultimately trial and any appeal that followed. Class certification is never certain, as

4   defendants may seek to decertify at any time through trial. Plaintiffs therefore faced the

5   ongoing risk that individual Class Members would have to file their own lawsuits or that

6   payouts on any class-wide recovery would be substantially delayed by appeals.

7       Litigating this case to trial and through any appeals would be expensive and time-

8   consuming and would present risk to both parties. The settlement, by contrast, provides

9   prompt and certain relief for Class Members. *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948,

10  966 (9th Cir. 2009); *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal.

11  2004) ("The Court shall consider the vagaries of litigation and compare the significance of

12  immediate recovery by way of the compromise to the mere possibility of relief in the future,

13  after protracted and expensive litigation." (citation omitted)).

14      "A key inquiry is whether the parties had enough information to make an informed

15  decision about the strength of their cases and the wisdom of settlement." *Rinky Dink, Inc. v.*

16  *World Business Lenders*, Case No. C14-0268-JCC, 2016 WL 3087073, at *3 (W.D. Wash. May 31,

17  2016); *see also In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 459. Plaintiffs and Class Counsel's

18  decision to settle was informed by extensive discovery, data analysis, and the Court's ruling on

19  contested motions for class certification and summary judgment.

20      3.   The settlement will be fairly distributed to Settlement Class Members.

21      The funds will be allocated to Settlement Class Members in a manner that is fair and

22  reasonable. *See, e.g.*, *Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 225 (N.D. Ill. 2015)

23  (When some class members have stronger claims than others, it is appropriate to provide larger

24  settlement awards to those class members.). Each Settlement Class Member's share will be

25  based on his or her actual damages. Under the FDCPA, statutory damages for absent class

26  members are limited to $500,000 or 1% of CDR's net worth, whichever is less. 15 U.S.C.

27  § 1692k(a)(2)(B). CDR's net worth is approximately $300,000. Chandler Decl. ¶ 19. Finally,

1    Settlement Class Members will benefit from the injunctive relief that will curtail many of the

2    allegedly violative practices in this action.

3           4.    <u>Class Counsel will request approval of a fair and reasonable fee.</u>

4           Class Counsel intend to request an award of $600,000 to compensate them for the work

5    performed on behalf of the Class and to reimburse them for out-of-pocket expenses they have

6    incurred in prosecuting this action. The attorneys' fees and costs Class Counsel seek are

7    reasonable under the circumstances of this case. *See In re Bluetooth Headset Products Liab.*

8    *Litig.*, 654 F.3d 935, 941 (9th Cir. 2011) (requiring that any attorneys' fee awarded be

9    reasonable). District courts have discretion to use either the percentage-of-the-fund or the

10   lodestar method to calculate a reasonable attorneys' fee from a common fund established by a

11   class action settlement. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). The

12   lodestar calculation method is appropriate where, as here, a fee-shifting statute authorizes "the

13   award of fees to ensure compensation for counsel undertaking socially beneficial litigation."

14   *Bluetooth*, 654 F.3d at 941. All of the certified claims arise under statutes that provide for fee

15   shifting to encourage litigation in the public interest. *See* 15 U.S.C. § 1692k(a)(3) (FDCPA); RCW

16   19.86.090 (CPA); RCW 59.18.260 and .270 (RLTA).

17          "Under the lodestar/multiplier method, the district court first calculates the 'lodestar'

18   by multiplying the reasonable hours expended by a reasonable hourly rate." *In re Wash. Pub.*

19   *Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1295 n.2 (9th Cir. 1994). Class Counsel have already

20   invested more than 2,245 hours into prosecution of the case. After reducing their hours based

21   on billing judgment, Class Counsel's lodestar, calculated at reasonable rates for this district,

22   exceeds $672,000. Class Counsel have also incurred $10,700 in out-of-pocket expenses.

23   Chandler Decl. ¶ 17; Leonard Decl. ¶ 7; Arons Decl. ¶ 4.

24          The Ninth Circuit uses 25% as the benchmark to calculate and attorneys fee award using

25   the percentage of the fund method. *Online DVD-Rental*, 779 F.3d at 949. But the Ninth Circuit

26   has recognized that "the benchmark percentage should be adjusted, or replaced by a lodestar

27   calculation, when special circumstances indicate that the percentage recovery would be either

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1   too small or too large in light of the hours devoted to the case or other relevant factors." *Six (6)*

2   *Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990). Using the

3   benchmark percentage to calculate a reasonable fee in this case would result in award that is

4   too small. Although the requested award is 37.5% of the Settlement Fund, it reflects a negative

5   multiplier of .89 of Class Counsel's lodestar. *See Dennings v. Clearwire Corp*, Case No. C10-

6   1859JLR, 2013 WL 1858797, at *6 (W.D. Wash. May 3, 2013) (finding reasonable a fee request

7   with a negative multiplier of between .92 and .98). The requested award is reasonable under

8   the circumstances of this case. *See, e.g., Cavnar v. BounceBack, Inc.*, No. 2:45-CV-235-RMP, ECF

9   No. 154 (E.D. Wash. Sept. 15, 2015) (granting final approval of settlement and approving award

10  equaling 43% of "limited" total settlement fund of $530,000, where award was less than

11  reasonable lodestar).

12       Use of the lodestar method here is particularly reasonable given the significant non-

13  monetary aspects of Settlement. Using the percentage-of-the-fund method to calculate a fee in

14  a settlement that provides substantial injunctive relief, in addition to significant monetary

15  relief, is likely to result in a fee that is too low considering counsel's success on the merits. *See*

16  *Bluetooth*, 654 F.3d at 941 (the lodestar method should be used when class counsel obtain

17  significant injunctive relief under a fee shifting statute). CDR agreed to cease collection of

18  amounts above principal from Settlement Class Members, request deletion of negative credit

19  reporting that impacts a tenant's ability to obtain rental housing, enter satisfactions of

20  judgments for amounts above principal, and cease adding prejudgment interest to the accounts

21  of former HNN tenants.

22       Plaintiffs' counsel will prepare and file a comprehensive motion for an award of

23  attorneys' fees supported by detailed time entry records within thirty days after the Court

24  enters a preliminary approval order in this matter. The motion will be posted on the Settlement

25  Website 30 days before the deadline for class members to opt-out of or object to the

26  settlement. Settlement Agreement § IV.2; Fed. R. Civ. P. 23(h); *In re Mercury Interactive Corp.*

27  *Sec. Litig.*, 618 F.3d 988, 994 (9th Cir. 2010).

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1          5.    <u>The reaction of Class Members to the proposed settlement</u>.

2    Class Members have not yet had an opportunity to react to the proposed settlement

3    because notice has not yet gone out. Plaintiffs will provide the Court with information about

4    Class Members' reaction in their motion for final approval of the settlement.

5    **F.**    **The Notice Plan complies with Rule 23(e) and due process.**

6    Rule 23(e)(1) requires the Court to "direct notice in a reasonable manner to all class

7    members who would be bound by" a proposed settlement. Fed. R. Civ. P. 23(e)(1). Class

8    members are entitled to the "best notice that is practicable under the circumstances" of any

9    proposed settlement before it is finally approved by the Court. Fed. R. Civ. P. 23(c)(2)(B). Under

10    Rule 23(c)(2)(B) "notice may be by one or more of the following: United States mail, electronic

11    means, or other appropriate means." To comply with due process, notice must be "the best

12    notice practicable under the circumstances, including individual notice to all members who can

13    be identified through reasonable effort." *Amchem Prods. v. Windsor*, 521 U.S. 591, 617 (1997).

14    The notice must state in plain, easily understood language: (i) the nature of the action; (ii) the

15    definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member

16    may enter an appearance through an attorney if the member so desires; (v) that the court will

17    exclude from the class any member who requests exclusion; (vi) the time and manner for

18    requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule

19    23(c)(3). Fed. R. Civ. P. 23(c)(2)(B); *see also In re Hyundai and Kia Fuel Econ. Litig.*, 926 F.3d at

20    567 ("settlement notices must 'present information about a proposed settlement neutrally,

21    simply, and understandably'") (citation omitted).

22    The parties have developed a Notice Plan that will include direct mail notice to Class

23    Members using address information from Defendants' records and a website that contains

24    more detailed information about the case and the Settlement. Settlement Agreement § VII.a.

25    P&N will send the large postcard notice to Class Members directly through first class mail using

26    the most recent address information available based on Defendants' records and the USPS

27    National Change of Address database. *Id.* § VII.3.a.i. P&N will also perform one advanced

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1  address search for each Class Member whose notice is returned undeliverable. *Id*. § VII.3.a.ii. In

2  addition to the postcard notice, P&N will establish and maintain a Settlement Website which

3  will display, at a minimum, the operative Complaint, Postcard Notice, Website Notice, the

4  Settlement Agreement, opt-out form, the Preliminary Approval Order, Class Counsel's Motion

5  for Fees and all other filings and orders made in connection with settlement of this action. *Id*.

6  § VII.3.b, Ex. B (the Website Notice). Class Counsel will establish a toll-free number that Class

7  Members can call for more information.

8      The postcard and website notices, attached as Exhibits 2 & 3 to the declaration of Blythe

9  Chandler,[3] are drafted in plain English and are easy to understand. They include key information

10 about the settlement, including the deadline to request exclusion or object to the settlement,

11 and the date of the Final Approval Hearing (and that the hearing date may change without

12 further notice). The notices state the amount of the fee and cost award Class Counsel will

13 request, the amount of the statutory and service awards Plaintiffs will request, and the

14 estimated costs of administration. The notices disclose that by participating in the Settlement,

15 Settlement Class Members give up the right to sue Defendants for claims covered by the

16 release. The notices direct Class Members to the Settlement Website for further information,

17 where copies of the notices, the Settlement Agreement, the complaint, the opt-out form, and

18 motions and orders relating to the Settlement will be posted. Settlement Agreement § VII.3.b.

19 The notices provide contact information for Class Counsel and the Class Administrator.

20     Class Members will have sixty days from the Settlement Notice Date to opt out of the

21 Class or to submit objections. *Id*. § II.11–12, VIII.1, IX.1. After final approval, P&N will mail

22 awards to all Settlement Class Members for whom P&N has a deliverable address at the

23 address of the primary tenant listed for each tenant account code that is part of the Classes.

24

25

26 [3] After the Settlement Agreement was executed, the parties agreed to minor revisions to the notices attached to the Settlement Agreement as Exhibits A and B. The revisions explain that a single check will be mailed to the primary tenant of HNN unit for tenant accounts that are part of the Classes. The revised notices are Exhibits 2 and

27 3 to the declaration of Blythe Chandler.

PLAINTIFFS' UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT - 18
Case No. 2:19-cv-00620-JLR

1  Settlement Payments will be calculated by P&N based on Defendants' data. *Id*. § III.2 Class

2  Members are not required to submit claims to receive payment.

3         The parties request that the Court approve distributions in *cy pres* to the Washington

4  Community Action Network (Washington CAN) and Mary's Place of any amounts remaining in

5  the Settlement Fund 90 days after issuance of the checks, if a second distribution to Settlement

6  Class Members is not administratively feasible. *Id*. § III.4–5. No funds will revert to Defendants.

7  *Id*. at III.1. A "*cy pres* remedy must account for the nature of the plaintiffs' lawsuit, the

8  objectives of the underlying statutes, and the interests of the silent class members. . . ." *Lane v.*

9  *Facebook, Inc.*, 696 F3d 811, 820-21 (9th Cir. 2012) (quotations omitted). Washington CAN is a

10  non-profit organization that seeks to achieve racial, social, gender and economic justice in

11  Washington. Its Housing Justice campaign provides support and resources for Washington

12  renters facing homelessness and other hardships as a result of abusive landlord practices. *See*

13  www.washingtoncan.org. Mary's Place is a local non-profit organization operating seven

14  emergency family shelters across King County, which provide safe, inclusive shelter and services

15  to women, children, and families experiencing homelessness. *See* www.marysplaceseattle.org.

16  Since its founding in 1999, Mary's Place has helped hundreds of women and families find stable

17  housing. Distribution of any remaining funds to these organizations will serve (1) the Consumer

18  Protection Act's overarching purpose of protecting Washington consumers from unfair or

19  deceptive business practices, *see* RCW 19.86.050, 19.86.920; and (2) the Collection Agency Act's

20  and the Fair Debt Collection Practices Act's shared purpose to "protect vulnerable and

21  unsophisticated debtors from abuse, harassment, and deceptive collection practices." *Guerrero*

22  *v. RJM Acquisitions LLC,* 499 F.3d 926, 938 (9th Cir. 2007); *see also Panag v. Farmer's Ins. Co. of*

23  *Wash.*, 166 Wash.2d 27, 54, 204 P.3d 885 (2009). The *cy pres* award will benefit the interest of

24  the Class Members affected by the debt collection practices at issue in this case.

25         The manner and content of the proposed Notice Plan complies with Rule 23 and due

26  process.

27

PLAINTIFFS' UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT - 19
CASE NO. 2:19-CV-00620-JLR

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

**G.    The schedule for final approval.**

The next steps in the settlement approval process are to schedule a final approval hearing, notify Class Members of the settlement and hearing, and provide class members with the opportunity to exclude themselves from, or object to, settlement. The parties propose the following schedule for final approval of the settlement:

| ACTION | DATE |
|---|---|
| Deadline for Mailing Class Notice ("Notice Deadline") | 30 days after entry of Preliminary Approval Order |
| Class Counsel's Fee Motion Submitted | 30 days after Notice Deadline |
| Exclusion/Objection Deadline | 60 days after Notice Deadline |
| Final Approval Brief and Response to Objections Due | No later than 14 days prior to the Final Approval Hearing |
| Final Approval Hearing / Noting Date | At the Court's discretion, but no earlier than 120 days after the Preliminary Approval Order is entered. |
| Final Approval Order Entered | At the Court's discretion |

**V.  CONCLUSION**

Plaintiffs respectfully request that the Court take the following initial steps in the settlement approval process: (1) provisionally certify the proposed CDR FDCPA Subclass and designate Cynthia Quintero as the subclass representative; (2) grant preliminary approval of the settlement; (3) approve the proposed notice plan; (4) appoint P&N to serve as the Class Administrator; and (5) schedule the final fairness hearing and related dates.

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT - 20
CASE NO. 2:19-cv-00620-JLR

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1    RESPECTFULLY SUBMITTED AND DATED this 14th day of January, 2021.

2                                    TERRELL MARSHALL LAW GROUP

3
                                    By: /s/ Beth E. Terrell, WSBA #26759
4                                        Beth E. Terrell, WSBA #26759
                                         Email: bterrell@terrellmarshall.com
5                                        Blythe H. Chandler, WSBA #43387
6                                        Email: bchandler@terrellmarshall.com
                                         Ari Y. Brown, WSBA #29570
7                                        Email: abrown@terrellmarshall.com
                                         Brittany J. Glass, WSBA #52095
8                                        Email: bglass@terrellmarshall.com
9                                        936 North 34th Street, Suite 300
                                         Seattle, Washington 98103-8869
10                                       Telephone: (206) 816-6603
11                                       Facsimile: (206) 319-5450

12                                       Sam Leonard, WSBA #46498
                                         Email: sam@seattledebtdefense.com
13                                       LEONARD LAW
14                                       3614 California Avenue SW, #151
                                         Seattle, Washington 98116
15                                       Telephone: (206) 486-1176
                                         Facsimile: (206) 458-6028
16

17                                       Paul Arons, WSBA #47599
                                         Email: lopa@rockisland.com
18                                       LAW OFFICE OF PAUL ARONS
                                         685 Spring Street, #104
19                                       Friday Harbor, Washington 98250
20                                       Telephone: (360) 378-6496
                                         Facsimile: (360) 378-6498
21

22                                       *Attorneys for Plaintiffs*

23

24

25

26

27

PLAINTIFFS' UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT - 21
CASE NO. 2:19-CV-00620-JLR